IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION<br>1310 North Courthouse Road, Suite 700<br>Arlington, VA 22201,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF COMMERCE<br>1401 Constitution Avenue NW<br>Washington, D.C. 20230; and<br><br>NATIONAL INSTITUTE OF STANDARDS<br>AND TECHNOLOGY<br>100 Bureau Drive<br>Gaithersburg, MD 20899,<br><br>*Defendants*. | Civil Action No. 23-1410 |

## COMPLAINT

1. Plaintiff Americans for Prosperity Foundation ("AFPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requesting access to agency records maintained by Defendants United States Department of Commerce ("Commerce") and the National Institute of Standards and Technology ("NIST").

2. AFPF seeks records concerning the Biden Administration's attempts to impose certain requirements on the Creating Helpful Incentives to Produce Semiconductors Act ("CHIPS Act"), including restrictions explicitly rejected by Congress.

3. Neither Commerce nor NIST has issued a timely determination on AFPF's FOIA requests nor have they produced the requested records.

4. The records at issue have significant value that serves the public interest insofar as they shine light on the Biden Administration's arguably improper implementation of the CHIPS Act and possible misdistribution of billions of taxpayer dollars in contravention of the rule of law. *See generally infra* ¶¶ 10–12.

## JURISDICTION AND VENUE

5. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

6. Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

7. Plaintiff AFPF is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Among other things, AFPF seeks to highlight the folly of national industrial policy and centralized planning. AFPF is therefore investigating the Biden Administration's improper implementation of the CHIPS Act and its imposition of progressive policy priorities that Congress has considered and rejected. AFPF routinely files and litigates FOIA requests. It also relies on the legal, investigative, and editorial expertise of its staff to review the results of its requests and to produce distinct news and educational materials that are distributed to the interested public.

8. Defendant Commerce is an agency within the meaning of 5 U.S.C. § 552(f)(1). Commerce has possession, custody, and control of agency records to which AFPF seeks access and that are the subject of this Complaint.

9. Defendant NIST is an agency within the meaning of 5 U.S.C. § 552(f)(1). Its parent agency is Defendant Commerce. NIST has possession, custody, and control of agency records to which AFPF seeks access and that are the subject of this Complaint.

**FACTS**

**I.      The Biden Administration's Implementation of the CHIPS Act**

10.     With the CHIPS Act of 2022, Congress set aside hundreds of billions of taxpayer dollars to fund—*e.g.*, through direct subsidies and investment tax credits, *etc.*—domestic research and manufacturing of high-tech chips and semiconductors to promote economic and national security.  *See generally* Pub. L. No. 117-167, 136 Stat. 1366 (2022).

11.     Commerce and NIST have sought to frustrate faithful implementation of the CHIPS Act by piling on extra costs that make it more difficult to onshore production.  *See, e.g.*, *Americans for Prosperity Foundation Launches Investigation of the Biden Administration's Abuse of the CHIPS Act*, Ams. for Prosperity, Mar. 20, 2023, https://bit.ly/3FUB2go; *see also* Bryan Riley, *Biden Administration Disregards Senate CHIPS Vote*, Nat'l Taxpayers Union, Mar. 7, 2023, https://bit.ly/3MN7BB8 ("[T]he Biden administration subsequently announced a number of limitations on CHIPS funding beyond those included in the Act.  The new restrictions prioritize funding for companies that comply with the administration's preferences on issues ranging from the provision of child care benefits to the use of union labor.").

12.     Commerce Secretary Gina Raimondo even advised agency staff that, "[i]f Congress [is not] going to do what they should have done [to expand subsidized childcare], we're going to do it in implementation."  Jim Tankersley & Ana Swanson, *Biden's Semiconductor Plan Flexes the Power of the Federal Government*, N.Y. Times, Feb. 27, 2023, https://nyti.ms/3KKiz7H; *see id.* ("Now, the Commerce Department is trying to utilize a centerpiece of those efforts [the CHIPS Act], which aims to expand American semiconductor manufacturing, to make at least a small dent in [Biden's] large goals for the so-called care economy.").

**II.     AFPF's March 20, 2023 FOIA Request to Commerce**

13.     By letter, dated March 20, 2023, AFPF submitted a single-item FOIA request via email to Commerce's Office of Privacy and Open Government seeking access to the following:

> All internal and external communications (*e.g.*, e-mail, text and instant messaging, calendar item), including attachments, that are responsive to any of the following keyword searches:
>
> a. "CHIPS" AND "buybacks"
> a. "CHIPS" AND ("NEPA" OR "National Environmental Policy Act")
> b. "CHIPS" AND ("profit" OR "upside sharing")
> c. "CHIPS" AND ("child care" OR "childcare")
> d. "CHIPS" AND "Buy America"
> e. "CHIPS" AND (["Biden" OR "POTUS" OR "President"] AND ["election" OR "2024"])
> f. "CHIPS" AND ("ESG" OR "Environmental")

**Exhibit 1.**[1]

14.     AFPF identified the relevant time period for Commerce's search as "November 1, 2022 to the present," and it defined the term "present" as "the date on which the . . . [agency] begins its search for responsive records." *Id.*

15.     AFPF also asked the agency to limit its search to "the following records custodians and include any alias accounts maintained by those individuals":

> A. Secretary Gina M. Raimondo
> B. Chief of Staff Mike Harney
> C. Deputy Chief of Staff Luis Jiminez
> D. Deputy Chief of Staff Calynn Jenkins
> E. White House Liaison Miguel L'Heureux
> F. Director of Public Affairs Brittany Caplin

*Id.*

16.     AFPF defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.*  AFPF explained that "[i]f

---

[1] AFPF mistakenly numbered the first two keyword searches included as part of Item 1 as "a."

4

any portion of a 'record' . . . is responsive to AFPF's request, then the agency should process and disclose the record in its entirety." *Id.* Thus, "[i]f the agency consider[ed] a medium of information storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter of scope of AFPF's request," it must process all potentially segmented records as responsive. *Id.*

17. AFPF likewise explained that, as far as email chains were concerned, it sought "the entirety of all potentially responsive email chains." *Id.* ("If any portion of a record . . . is found to be potentially responsive to AFPF's request, then Commerce should process the record in its entirety without any further segmentation or subject-matter scoping.").

18. AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them" and Commerce could omit such records from the scope of the request. *Id.*

19. AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.*

20. By email, dated March 20, 2023, Commerce acknowledged it had received AFPF's request and assigned it tracking number DOC-OS-2023-001429. **Exhibit 2**.

21. Commerce "fully granted" AFPF's request for a public interest fee waiver on the same day. **Exhibit 3**.

22. Commerce subsequently changed the tracking number of AFPF's FOIA request four times:

        a.    On March 20, 2023 to DOC-IOS-2023-001429.  **Exhibit 4**.
        b.    On March 21, 2023 to DOC-CEN-2023-001429.  **Exhibit 5**.
        c.    Again, on March 21, 2023 to DOC-2023-001429.  **Exhibit 6**.
        d.    On March 23, 2023 back to DOC-IOS-2023-001429.  **Exhibit 7**.

23. To date, Commerce has failed to provide any further update on the processing of AFPF's request. The agency has neither issued a determination nor produced responsive records.

24. Commerce has never cited "unusual circumstances" that might delay the processing of AFPF's request.

25. Commerce was required to issue a determination by April 18, 2023.

### III. AFPF's March 20, 2023 FOIA Request to NIST

26. By letter, dated March 20, 2022, AFPF submitted a similar one-item FOIA request via email to NIST seeking access to the following:

> All internal and external communications (e-mail, text and instant messaging, calendar item), including attachments, that are responsive to any of the following keyword searches:
>
>     a.    "CHIPS" AND "buybacks"
>     a.    "CHIPS" AND ("NEPA" OR "National Environmental Policy Act")
>     b.    "CHIPS" AND ("profit" OR "upside sharing")
>     c.    "CHIPS" AND ("child care" OR "childcare")
>     d.    "CHIPS" AND "Buy America"
>     e.    "CHIPS" AND (["Biden" OR "POTUS"] AND ["election" OR "2024"])
>     f.    "CHIPS" AND ("ESG" OR "Environmental")

**Exhibit 8**.[2]

27. AFPF identified the relevant time period for NIST's search as "November 1, 2022 to the present," and it defined the term "present" as "the date on which the . . . [agency] begins its search for responsive records." *Id.*

28. AFPF also asked the agency to limit its search to "the following records custodians and include any alias accounts maintained by those individuals":

    A.    NIST Director Laurie Locascio
    B.    Mike Schmidt, Director of the CHIPS Program Office
    C.    Eric Lin, CHIPS Research and Development Office

---

[2] AFPF mistakenly numbered the first two keyword searches included as part of Item 1 as "a."

6

    D. Adrienne Elrod, Director of External and Government Affairs
    E. Rebecca Callahan, Director of Legislative Affairs
    F. Morgan Dwyer, Chief Strategy Officer
    G. Atissa Ladjevardian, Chief of Staff for External and Government Affairs
    H. Sara Meyers, Chief Operating Officer & Chief of Staff
    I. Kylie Patterson, Senior Advisor for Opportunity and Inclusion
    J. Matt Hill, Communications Director

*Id.*

29. AFPF defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.* AFPF explained that "[i]f any portion of a 'record' . . . is responsive to AFPF's request, then the agency should process and disclose the record in its entirety." *Id.* Thus, "[i]f the agency consider[ed] a medium of information storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter of scope of AFPF's request," it must process all potentially segmented records as responsive. *Id.*

30. AFPF likewise explained that, as far as email chains were concerned, it sought "the entirety of all potentially responsive email chains." *Id.* ("If any portion of a record . . . is found to be potentially responsive to AFPF's request, then NIST should process the record in its entirety without any further segmentation or subject-matter scoping.").

31. AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them" and NIST could omit such records from the scope of the request. *Id.*

32. AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.*

33. By email, dated April 19, 2023, AFPF inquired as to the status of its FOIA request, which NIST had not yet acknowledged receiving despite twenty business days having passed. **Exhibit 9**.

34. AFPF sent this email with a request for delivery confirmation and "read receipt." Although NIST's email server did not appear to provide for delivery confirmation, AFPF's email was successfully dispatched. **Exhibit 10** ("Delivery to these recipients . . . is complete[.]").

35. AFPF again tried to contact NIST on April 20, 2023. **Exhibit 11**. AFPF's second follow-up email was successfully delivered to NIST and read by officials. **Exhibits 12–14**.

36. Shortly after AFPF transmitted its follow-up inquiry, NIST provided a response and attached what it identified as an acknowledgment letter. **Exhibit 15**. NIST also claimed it still "needed to confer with DOC to see who should take lead" on processing AFPF's request. *Id.*

37. NIST's acknowledgment letter provided the following ostensible details about the agency's receipt of AFPF's FOIA request:

> Your request was received at the FOIA Control Desk on April 19, 2023 and was assigned the temporary FOIA Log # DOC-NIST-INTERIM-08.
>
> The Department of Commerce is in the process of instituting a new FOIA Case Management System. During this interim time, NIST is assigning a temporary tracking number to FOIA requests. Upon launch of the new system, NIST will send an-acknowledgement [*sic*] letter providing the permanent tracking number for your FOIA.

**Exhibit 16**.

38. In separate correspondence, also delivered on April 20, 2023, NIST granted AFPF's request for a public interest fee waiver. **Exhibit 17**.

39. NIST purported to invoke "unusual circumstances" and to extend its deadline to provide a determination on AFPF's FOIA request by ten working days. *Id.*

40. Finally, NIST explained "[r]esponsive documents will be forwarded to [AFPF] on a rolling basis as they come available." *Id.*

41. Upon further inquiry, NIST effectively conceded its acknowledgment letter had misstated the date of receipt of AFPFs FOIA request. The agency admitted it had received the request on the same day as its submission: March 20, 2023. **Exhibit 18**.

42. NIST appeared to claim there was confusion whether Commerce "would be taking the request" but a decision had been made such that "NIST will be taking lead." *Id.*

43. To date, NIST has failed to provide any further update on the processing of AFPF's request. The agency has neither issued a determination nor produced responsive records.

44. Before claiming "unusual circumstances," NIST was required to provide a determination on AFPF's request by April 18, 2023.

45. Assuming NIST properly extended its deadline, it was required to issue a determination on AFPF's request by May 2, 2023.

## COUNT I
### Violation of the FOIA: Failure to Comply with Statutory Requirements

46. AFPF repeats all of the above paragraphs.

47. The FOIA requires an agency to accept and process any request for access to agency records that (a) "reasonably describes such records," and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A).

48. The FOIA also requires an agency to respond to a valid request within 20 business days or, in "unusual circumstances," within 30 business days. *Id.* § 552(a)(6)(A)–(B).  If an agency requires additional time to process a request, the FOIA mandates it provide the requester with "an opportunity to arrange . . . an alternative time frame for processing the request[.]"  *Id.* § 552(a)(6)(B)(ii); *see* 15 C.F.R. § 4.6(d)(1).

9

49. The "receipt" of a FOIA request triggers an agency's obligation to respond and therefore starts the countdown for all relevant statutory deadlines. 5 U.S.C. § 552(a)(6)(A)(i); *see, e.g.*, *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) ("[W]hen an agency receives a FOIA request . . . it must take responsibility for processing the request."); *see also* 15 C.F.R. § 4.6(b).

50. Defendants' FOIA regulations stipulate that "the proper component . . . to respond to a request for records is the *component that first receives the request* and has responsive records . . . or the component to which the Departmental FOIA Officer of component FOIA Officer assigns lead responsibility for responding to the request." 15 C.F.R. § 4.5(a) (emphasis added).

51. The decision to re-route a request—or to assign primary responsibility for coordinating the agency's response—must be made "not later than ten working days after the request is first received by any designated component." *Id.* § 4.6(b).

52. The decision to invoke "unusual circumstances" must be communicated to a requester "before expiration of the twenty-day period to respond[.]" *Id.* § 4.6(d)(1).

53. AFPF's FOIA requests seek access to agency records maintained by Commerce and NIST. The requests reasonably describe the records sought and comply with the FOIA and applicable agency regulations. They were properly submitted to and received by Defendants.

54. Both Commerce and NIST received AFPF's valid requests on March 20, 2023.

55. Neither Commerce nor NIST have claimed AFPF's requests were misdirected. Such a determination would have needed to be made by April 3, 2023, which it was not.

56. Commerce has not invoked "unusual circumstances" in the processing of AFPF's request.

57. Commerce's determination on AFPF's FOIA request was due by April 18, 2023.

58. NIST's attempted invocation of "unusual circumstances" on April 20, 2023 was infirm because the agency's FOIA regulations required any extension of the component's final response deadline to be communicated to AFPF by April 18, 2023.

59. Assuming NIST had properly extended its response deadline, its determination would have been due by May 2, 2023.

60. Both Commerce and NIST have failed to issue a determination on or promptly produce agency records responsive to AFPF's requests within the applicable statutory time limits.

61. AFPF is irreparably harmed by Defendants' violation of the FOIA and their unlawful withholding of responsive agency records to which AFPF is statutorily entitled.

62. AFPF will continue to be irreparably harmed until such time as Defendants are compelled to satisfy their obligations under the FOIA.

63. AFPF has exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## RELIEF REQUESTED

WHEREFORE, Plaintiff AFPF respectfully requests and prays that this Court:

a. Order Defendants Commerce and NIST to process AFPF's FOIA requests and issue determinations upon the issuance of the Order;

b. Order Defendants promptly to produce all non-exempt agency records responsive to AFPF's FOIA requests;

c. Maintain jurisdiction over this case until Defendants comply with the Order and, if applicable, adequately justify their treatment of all relevant records;

d. Award AFPF its costs and reasonable attorney fees incurred here pursuant to 5 U.S.C. § 552(a)(4)(E); and

e. Grant such other relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: May 18, 2023 | Respectfully submitted,<br><br>*/s/ Ryan P. Mulvey*<br>Ryan P. Mulvey<br>D.C. Bar No. 1024362<br>Lee A. Steven<br>D.C. Bar No. 468543<br><br>AMERICANS FOR PROSPERITY FOUNDATION<br>1310 North Courthouse Road, Suite 700<br>Arlington, VA 22201<br>Telephone: (571) 444-2841<br>rmulvey@afphq.org<br>lsteven@afphq.org<br><br>*Counsel for Plaintiff* |